UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | CHAPTER 11 |
| | § | |
| ATP OIL & GAS CORPORATION, | § | CASE NO. 12-36187 |
| | § | |
| Debtor. | § | HON. MARVIN ISGUR |
| | § | |
| OMEGA NATCHIQ, INC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADV. PROC. NO. 14-03301 |
| | § | |
| ATP INFRASTRUCTURE PARTNERS, L.P. | § | |
| | § | |
| Defendant. | § | |

ATP INFRASTRUCTURE PARTNERS, L.P.'S
MOTION FOR WITHDRAWAL OF THE REFERENCE

ATP Infrastructure Partners, L.P., a Delaware limited partnership ("Defendant"), files this *Motion* (this "Motion")[1] seeking withdrawal of the reference pursuant to 28 U.S.C. § 157(d), Rule 5011(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 5011-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules").  In support, Defendant respectfully states:

---

[1]  This Motion contains references to docket entries in multiple cases and courts.  For clarity, references to docket entries in this Adversary Proceeding, Adv. Proc. No. 14-03301 (this "Adversary Case"), are noted as "Adv. Dkt. No."  References to docket entries in the bankruptcy case of ATP Oil & Gas Corporation (the "Debtor" or "ATP"), Case No. 12-36817 (the "Bankruptcy Case"), are noted as "Bankr. Dkt. No."  References to docket entries in the parallel proceeding initiated by Plaintiff against Defendant in the United States District Court for the Eastern District of Louisiana, Case No. 13-04985 (the "Louisiana District Court Case"), are noted as "La. Dkt. No."

I. **PRELIMINARY STATEMENT**[2]

1. The limits of bankruptcy jurisdiction must necessarily frame whether withdrawal of the reference under 28 U.S.C. § 157(d) is appropriate. Generally, the seminal case in the Fifth Circuit on withdrawal of the reference indicates that the "good cause" standard of § 157(d) is protect the authority of bankruptcy courts to hear matters which could affect the rights of a bankruptcy debtor and its creditors. *See Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985) ("[T]he district court's decision to hear a case like the present one, *which will adjudicate the rights of the debtor and its creditors* to insurance policy proceeds, must be based on a sound, articulated foundation.") (emphasis added). Consequently, the so-called *Holland America* factors, which guide district courts in determining whether to withdraw the reference, rely heavily upon the impact a proceeding may have on the underlying Bankruptcy Case. Said another way, the *Holland America* factors countenance against withdrawal of the reference if withdrawal would infringe on a bankruptcy court's ability to efficiently hear and resolve matters which affect the estate being administered.

2. Alternatively, this Adversary Case is a state-law dispute among non-debtors relating to non-estate property. The outcome of this Adversary Case will not adjudicate the rights of the debtor or the rights of a creditor with respect to the bankrupt estate, and the matter is unquestionably non-core. Accordingly, the good cause exists to withdraw the reference because there is no bankruptcy justification for this Adversary Case to be heard by the Bankruptcy Court.

---

[2] Capitalized terms used in this Preliminary Statement shall have the meaning ascribed to them in the body of the Motion.

## II. STATEMENT PURSUANT TO BANKRUPTCY RULE 7012

3. Although the Complaint failed to include an allegation whether this Adversary Case is core or non-core, Defendant submits that this Adversary Case is non-core. Defendant does not consent to entry of final orders or judgment by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").[3]

## III. FACTUAL BACKGROUND

### A. THE INNOVATOR

4. Defendant, a non-debtor entity, is the owner of the ATP Innovator Floating Platform Unit, Official Number 575567 (the "Innovator").

5. Previously, the Innovator was operated by the Debtor at the Lease Block 711 of Mississippi Canyon in the United States Gulf of Mexico ("MC 711"). The Debtor's use and operation of the Innovator was governed by a Platform Use Agreement dated as of March 6, 2009 (as amended, the "Platform Use Agreement") between Defendant and the Debtor.

### B. THE BANKRUPTCY CASE

6. On August 17, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the Bankruptcy Court thereby initiating the Bankruptcy Case.

7. On June 13, 2013, the Bankruptcy Court entered an order (the "Rejection Order") [Bankr. Dkt. No. 1999] authorizing rejection of, *inter alia*, the Platform Use Agreement, as well as other related contracts between the Debtor and Defendant. The Rejection Order also provided for the abandonment of the Debtor's interest in MC 711.

---

[3] Contemporaneously herewith, Defendant will file a motion to dismiss for, *inter alia*, lack of subject matter jurisdiction and failure to state a claim.

8. The Innovator was decommissioned pursuant to that certain June 14, 2013 order from Tommy Beaudreau, Acting Assistant Secretary of the United States Department of Interior ("DOI"), as further implemented by that certain MC 711 Maintenance and Decommissioning Agreement, dated August 29, 2013, by and among (a) the Debtor, (b) Anadarko Petroleum Corporation, (c) Anadarko E&P Onshore LLC, and (d) the DOI, and approved by the Bankruptcy Court on October 10, 2013 (such order as implemented, the "Decommissioning Order"). *See* Bankr. Dkt. Nos. 2527 and 2663.

9. The Innovator has been removed from MC 711 and is now moored at a shipyard located in Aransas Pass, Texas.

10. Plaintiff received actual notice of the Rejection Order and Decommissioning Order by virtue of its appearance and active participation in the Bankruptcy Case. Additionally, Plaintiff has been aware that the Innovator is located at the Aransas Pass facility for several months. Plaintiff's personnel and agents also engaged in a two-day inspection of the Innovator on June 17 and 18, 2014.

### C. PLAINTIFF'S ALLEGED RELATIONSHIP WITH THE DEBTOR

11. Plaintiff allegedly provided goods and services to the Debtor aboard the Innovator beginning in February 2008 through June 2013. Complaint at ¶ 10. Specifically, Plaintiff asserts that the Debtor owes Plaintiff approximately $2.2 million for unpaid goods and services provided to the Debtor. Complaint at ¶ 12. Plaintiff also asserts entitlement to an administrative claim against the Debtor for good and services provided after the Petition Date, as awarded by the Bankruptcy Court on March 18, 2014 in the amount of $649,026.47 [Bankr. Dkt. No. 3024].

12. Plaintiff, however, does not have a legal relationship, contractual or otherwise, with Defendant. Defendant denies that Plaintiff is entitled to any relief against Defendant.

### D. LOUISIANA DISTRICT COURT CASE

13. On July 3, 2013, almost one year after the Petition Date, Plaintiff filed a *Complaint* (the "Louisiana Complaint") [La. Dkt. No. 1] in the United States District Court for the Eastern District of Louisiana (the "Louisiana District Court") initiating the Louisiana District Court Case. Pursuant to the Louisiana Complaint, Plaintiff seeks declaratory recognition of an alleged privilege under the Louisiana Oil Well Lien Act to secure the amount of $1,293,351.34. The Louisiana Complaint does not seek a money judgment against Defendant, any form of injunctive or similar relief against the Innovator, or any other relief or remedies under federal law, state law, common law, or equity.

14. On July 9, 2014, the Louisiana District Court *sua sponte* entered an order the "Closure Order") [La. Dkt. No. 68] dismissing the motions for summary judgment without prejudice. Additionally, the Closure Order indefinitely continued all pre-trial and trial dates and administratively closed the case. "[W]ithin 30 days of final resolution of [Plaintiff's] claims in the Southern District of Texas," Plaintiff is to file a motion to reopen. (emphasis in original).

15. On September 23, 2014 Plaintiff filed the Complaint and initiated this Adversary Case.

### E. TEXAS STATE COURT CASE

16. Ostensibly admitting that the Bankruptcy Court would not have jurisdiction over this Adversary Case, Plaintiff commenced yet a *third* case against Defendant (the "Texas State Court Case")[4] on October 9, 2014, this time in the District Court of San Patricio County, Texas, 36th Judicial District (the 'Texas State Court"). In the Texas State Court Case, Plaintiff seeks similar relief (as well as relief not sought in either the Louisiana District Court Case or this Adversary Case).

---

[4] Cause No. S-14-6069CV-A.

IV.     **ARGUMENT AND AUTHORITIES**

17.     Pursuant to 28 U.S.C. § 157(a), a district court may provide for the reference of a proceeding arising in or related to a case under title 11.  Under this authority, the United States District Court for the Southern District of Texas (the "District Court") promulgated General Rule 2012-6 which provides for the automatic reference of such cases to the bankruptcy judges of the District Court.

18.     Referral under 28 U.S.C. § 157(a) is limited by § 157(d), which provides that a district court may withdraw the reference for cause shown.  The decision to withdraw the reference is entrusted to the sound discretion of the District Court.  *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 765 (S.D. Tex. 2007) (citing Fed. R. Bankr. P. 5011(a); *Mirant Corp. v. Potomac Elec. Power Co.*, 197 Fed.Appx. 285, 294 (5th Cir. 2006)).

19.     In the Fifth Circuit, "[t]he factors to be considered when determining whether to exercise permissive withdrawal of the reference of an adversary proceeding are: (1) whether the issues are core or non-core; (2) whether withdrawal would foster a more economical use of the parties' resources; (3) whether withdrawal would expedite the bankruptcy process; (4) whether withdrawal reduces forum shopping and confusion; (5) whether jury demands have been made; and (6) whether withdrawal would promote uniformity in bankruptcy administration." *In re Morrison*, 409 B.R. 384, 385-86 (S.D. Tex. 2009) (citing *Holland America*, 777 F.2d at 999).

20.     The balance of these factors weighs in favor of withdrawal.  As this Adversary Case is decidedly non-core (assuming bankruptcy jurisdiction exists, which Defendant contends it does not), and the remaining factors do not support retention of the reference, withdrawal of the reference is appropriate.

21.     Defendant urges that the determination of whether to withdraw the reference should be guided by the jurisdictional posture of this Adversary Case.  Notwithstanding that

bankruptcy jurisdiction does not exist pursuant to 28 U.S.C. § 1334(b) because the outcome of this Adversary Case could have no conceivable effect on the Debtor's bankruptcy estate, even if bankruptcy jurisdiction were found to exist, it would only exist on the periphery.

22. Without belaboring the point, the Debtor is not a party to this Adversary Case, and the property potentially affected by this Adversary Case (the Innovator) is not property of the estate. The Debtor has no legal interest, ownership or otherwise, in the Innovator. Recognition and enforcement of a privilege is purely a state-law issue and could have no conceivable effect on the administration of the Debtor's bankruptcy estate.

23. Defendant filed the Louisiana District Court Case seeking substantially the same relief as sought in this Adversary Case. The only apparent reason Defendant initiated this Adversary Case in the Bankruptcy Court was to escape its originally chosen forum. There is no independent reason that this Adversary Case belongs in the Bankruptcy Court.

24. Notably, the first *Holland America* factor, whether the issues presented by the Adversary Case are core or non-core, strongly supports withdrawal of the reference.

25. Core proceedings are those that arise under the Bankruptcy Code or arise in a bankruptcy case. *In re Morrison*, 409 B.R. 384, 390 (S.D. Tex. 2009) (adopting the report and recommendation of Judge Isgur) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96-97 (5th Cir. 1987)). "A case arises under title 11 '[i]f the proceeding involves a right created by the federal bankruptcy law.' A case arises in a case under title 11 '[i]f the proceeding is one that would arise only in bankruptcy.'" *Id.* (quoting *Wood*, 825 F.2d at 97). Further, even if a matter is listed under 28 U.S.C. § 157(d), which lists examples of core matters, it must still be determined that the matter "arises in" or "arises under." *Id.*

26.     On the other hand, a proceeding is non-core "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding . . . under § 157(c)(1) it is an 'otherwise related' or non-core proceeding." *Id.* (quoting *Wood*, 825 F.2d at 97).

27.     Though not determinative, "[t]he core versus non-core factor is an important factor within the permissive withdrawal analysis." *Id.* at 392 (S.D. Tex. 2009).

28.     As more fully set forth in the Motion to Dismiss filed contemporaneously with this Motion, the Bankruptcy Court does not have subject matter jurisdiction to hear this Adversary Case under 28 U.S.C. § 1334(b).  Assuming *arguendo* that bankruptcy jurisdiction exists, this Adversary Case is undoubtedly non-core.  Plaintiff's request for recognition and enforcement of a privilege on the Innovator is by Plaintiff's own admission a cause of action arising under Louisiana law.  *See* Complaint at ¶ 33.  Moreover, this Adversary Case does not invoke a substantive bankruptcy right and could exist outside of bankruptcy (and in fact, this Adversary Case does, as a practical matter, exist outside of bankruptcy in the Louisiana District Court and the Texas State Court Case).

29.     Since the Adversary Case is a non-core matter, this factor weighs in favor of withdrawal.  *See Morrison*, 409 B.R. at 392 (finding that where non-core issues predominated, this factor weighed in favor of withdrawal).

30.     Importantly, the purpose of the *Holland America* factors is to protect a bankruptcy court's ability to efficiently resolve matters which could impact the underlying bankruptcy case.  This purpose is evident in four of the five other *Holland America* factors:  (1) whether withdrawal would foster a more economical use of the parties' resources; (2) whether withdrawal

would expedite the bankruptcy process, (3) whether withdrawal reduces forum shopping and confusion, and (4) whether withdrawal would promote uniformity in bankruptcy administration.

31. However, where a case can have no impact on the underlying bankruptcy case (and especially where bankruptcy jurisdiction is questionable at best), the imperatives of the *Holland America* factors are not impacted.

32. This Adversary Case could have no conceivable effect on the Bankruptcy Case or the administration of the Debtor's bankruptcy estate. The Debtor is not a party to the Adversary Case. The outcome of this Adversary Case will not affect the Debtor's property, its rights, or its liabilities. The relief sought by Plaintiff depends solely upon non-bankruptcy law (*i.e.*, state law), and no provision of the Bankruptcy Code will be invoked.

33. The final remaining factor, whether jury demands have been made, is also inapplicable. Defendant has not made a jury demand in this Adversary Case.

34. There is no basis under *Holland America* that the Bankruptcy Court is more economical, expeditious, and appropriate as the forum for this Adversary Case than the District Court. Importantly, because Defendant's do not consent to final orders or judgments by the Bankruptcy Court, disposition of this Adversary Case will ultimately be decided by the District Court. Thus, withdrawal of the reference would result in a more efficient resolution of this Adversary Case.

35. In sum, the balance of the *Holland America* factors weighs in favor of withdrawal of the reference. The seeming neutrality of most of the factors stem from the lack of relationship that this Adversary Case has with the Bankruptcy Case and do not support retention of the reference. Accordingly, the reference should be withdrawn.

## V. PRAYER

Defendant respectfully requests that the District Court withdraw the reference of this Adversary Case from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d).

Dated: October 23, 2013

        Respectfully submitted,

        **VINSON & ELKINS LLP**

        /s/ *John Paul K. Napier*_____

        Paul E. Heath, SBT # 09355050
        James J. Lee, SBT # 12074550
        John Paul K. Napier, SBT # 24070314
        2001 Ross Ave., Suite 3700
        Dallas, Texas 75201
        Tel. 214.220.7700
        Fax 214.999.7727
        pheath@velaw.com
        jimlee@velaw.com
        jnapier@velaw.com

        **SPECIAL BANKRUPTCY**
        **COUNSEL FOR ATP**
        **INFRASTRUCTURE PARTNERS, L.P.**

        - and -

        **FOWLER RODRIGUEZ**

        Jon W. Wise, T.A., SBT # 00790161
        400 Poydras Street, 30th Floor
        New Orleans, LA  70130
        Tel: (504) 523-2600
        Fax: (504) 523-2705
        jwise@frfirm-law.com

        **COUNSEL FOR ATP**
        **INFRASTRUCTURE PARTNERS, L.P.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2014, a true and correct copy of the foregoing document has been served on Plaintiff by e-mail and U.S. mail.

/s/ *John Paul K. Napier*
Counsel