

ENTERED
03/15/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| ATP OIL & GAS CORPORATION § | CASE NO: 12-36187 | |
| Debtor(s) § | | |
| § | CHAPTER  7 | |
| § | | |
| OMEGA NATCHIQ, INC. § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 14-3301 | |
| § | | |
| ATP INFRASTRUCTURE PARTNERS, LP § | | |
| Defendant(s) § | | |
| § | | |

## MEMORANDUM OPINION

Omega Natchiq, Inc. ("Omega") filed this adversary proceeding against ATP Infrastructure Partners, LP ("Infrastructure") seeking a recognition and enforcement of its alleged privilege on the ATP Innovator, a floating hydrocarbon production facility. ATP Infrastructure Partners, L.P. seeks to dismiss this adversary proceeding, or, alternatively, requests this Court to withdraw the reference for lack of subject matter jurisdiction.

The United States District Court for the Southern District of Texas has already deferred under the first-to-file rule to the United States District Court for the Eastern District of Louisiana. As set forth in greater detail below, this judge will not revisit the decision of another judge of this Court when that decision has resolved this matter between these parties.

Infrastructure's motion to dismiss is granted.

### Factual and Procedural Background

The ATP Innovator is a floating hydrocarbon production facility that operated between 2008 and 2013 in the Gulf of Mexico, off the coast of Louisiana. (ECF No. 1 at 2). ATP Oil &

Gas Corp. ("ATP") operated the Innovator during this period.  ATP is the debtor in Case No. 12-36187.  Between February 2008 and June 2013, Omega supplied goods and services to ATP.  In its complaint, Omega alleges that, from February 2008 to June 2013, it continuously provided goods and services to ATP in connection with its operations on the Innovator, and during that time there was no period of more than ninety days during which it suspended services.  (ECF No. 1 at 3).  Omega alleges that ATP owes it a balance of $2,232,739.40 for goods and services it provided in connection with ATP's operations on the Innovator.  Some of the work performed by Omega occurred during the course of ATP's bankruptcy.  As a result, Omega was granted an allowed administrative expense claim of $649,026.47.  (ECF No. 1-6 at 1).  In allowing the administrative claim, the Court stated that the allowance of the claim did not preclude Omega from pursuing its lien rights against Infrastructure.  (*Id.* at 14-15).

On August 15, 2012 Omega recorded a statement of privilege under the Louisiana Oil Well Lien Act ("LOWLA"), which establishes a privilege for goods and services provided in connection with the operation of mineral properties.  La. R.S. 9:4861 et seq.  Omega has amended its statement of privilege on several occasions.  (ECF No. 1 at 4).  Omega alleges that between 2008 and 2013, ATP had exclusive control and exclusive right of use of the Innovator.  During the pendency of litigation regarding Omega's lien rights, the Innovator was moved to a shipyard near Aransas Pass, Texas.  (ECF No. 10 at 4).  The Innovator was then sold to a third party, apparently with disclosure to the buyer of Omega's alleged lien.  (ECF No. 22 at 1-2).

*ATP Infrastructure Partners, L.P.*

ATP Infrastructure Partners, L.P., the defendant in this adversary proceeding, was the record owner of the Innovator. Infrastructure is a Delaware limited partnership. The partners and their respective ownership interests are as follows:

1. ATP IP-LP, LLC, a Delaware limited liability company, owns a 49% interest in Infrastructure and is a limited partner. ATP IP-LP is owned by ATP Holdco, LLC. ATP Holdco, LLC is wholly owned by ATP.

2. ATP IP-GP, LLC, a Delaware limited liability company, owns a 2% interest in Infrastructure and is a general partner. ATP IP-GP is wholly owned by ATP Holdco.

3. EFS-R, LLC owns a 49% interest in Infrastructure and is a limited partner.

4. PE-ATP Innovator, Inc. manages Infrastructure, but does not have any ownership interest.

(ECF No. 1 at 2).

*Omega's attempts to enforce its lien*

Omega has instituted three lawsuits to determine its lien rights against the Innovator.

In July 2013, Omega filed suit in the United States District Court for the Eastern District of Louisiana against Infrastructure seeking to impose and enforce its LOWLA privilege and lien to secure ATP's debt ("Louisiana Case"). This suit is necessary under LOWLA to preserve Omega's privilege on the Innovator against third parties. La. R.S. 9:4865(B) ("A privilege shall also cease to have effect against a third person unless the claimant institutes an action for the enforcement of the privilege within one year after the date of the filing of the statement of privilege or financing statement."). Omega and Infrastructure filed cross motions for summary judgment. Omega's motion argued that ATP's corporate relationship with Infrastructure is such that any lien it seeks that would be valid against ATP is also valid against Infrastructure. On July 9, 2014 the Louisiana court issued an order dismissing the motions without prejudice,

staying the proceedings, and administratively closing the case until such time there is a "final resolution of Plaintiff's claims in the Southern District of Texas." Omega then motioned to reopen the case to amend its claim to add injunctive relief to prevent the sale of the Innovator without satisfaction of its lien. The United States District Court for the Eastern District of Louisiana denied Omega's request.

On September 23, 2014, this adversary proceeding was initiated by Omega, ostensibly seeking the same relief as was requested in the Louisiana Case.

On October 9, 2014, Omega filed a third case against Infrastructure in Texas state court seeking much the same relief. (ECF No. 5 at 7). Infrastructure timely removed the case to the United States District Court for the Southern District of Texas—Corpus Christi Division.

The Corpus Christi lawsuit was dismissed on April 27, 2015. In dismissing the case, the United States District Court found that many of the claims before it overlapped with claims pending before other federal courts, and therefore the case should be discretionarily dismissed under the first-to-file rule. (ECF No. 18-1 at 7). Omega's only argument against dismissal was that the Innovator was relocated into Texas courts' geographical jurisdiction during the pendency of the Louisiana Case. In response, the court pointed out that LOWLA does not require another suit to be filed in Texas because the statute would be satisfied by filing a "lis pendens notice in the mortgage records of any parish—or Texas county—to which the platform is moved." (ECF No. 18-1 at 7).

*Status of Omega's administrative claim*

In March 2014, this Court granted an allowed administrative expense claim of $649,026.47 to Omega in the ATP chapter 11 bankruptcy case. (Case No. 12-36187; ECF No. 3024 at 1). In the Memorandum Opinion granting the administrative expense claim, the Court

found that Omega had no obligation to pursue satisfaction of its administrative claim through any lien rights it may have on the Innovator. (*Id.* at 14). While Omega was not obligated to pursue any lien rights it had against the Innovator, nothing in the Court's Memorandum Opinion precluded such action.

The July 2015 closure order issued by the United States District Court for the Eastern District of Louisiana dismissed the parties' motions and administratively closed the case. The court stated, "in the interest of justice, comity, and judicial economy, it is ordered that the parties' [motions] are dismissed without prejudice to reurge after final resolution of Plaintiff's claims in the Southern District of Texas." (ECF No. 5-2 at 2) (emphasis omitted). The amount actually paid on Omega's administrative claim out of ATP's estate will not be determined until a final disbursement occurs in the (now) Chapter 7 bankruptcy case. That may be many months or years in the future.

On June 26, 2014, ATP's chapter 11 bankruptcy case was converted to a case under chapter 7 of the Bankruptcy Code. Significantly, the services entitling Omega to an administrative expense claim occurred prior to the conversion of ATP's bankruptcy case. Under § 726(b) of the Bankruptcy Code, an administrative claim "incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter . . . ." 11 U.S.C. § 726(b). As a consequence, Omega's allowed claim will only be paid after all administrative expenses incurred during the chapter 7 case are satisfied.

**Analysis**

Infrastructure makes four separate arguments in support of its motion to dismiss. Infrastructure argues that (1) under the first-to-file rule the Court should dismiss the case because of similar cases pending in other federal courts; (2) the rule against claims splitting prohibits

Omega from requesting not only recognition of its alleged privilege, but also a judgment that the Innovator be seized and sold, a claim Infrastructure argues could have been brought in a previous case; (3) the Court lacks subject matter jurisdiction under 28 U.S.C. § 1334(b); and (4) failure to state a claim upon which relief can be granted.

The first-to-file rule is a discretionary doctrine that is implicated when there are similar cases pending in multiple federal courts. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). Generally, "the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Id.* The first-to-file rule "rests on principles of comity and sound judicial administration." *Id.* "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985). Infrastructure argues that because Omega filed this adversary proceeding *after* it initiated the Louisiana Case, and the claims substantially overlap, this Court—as the court of last filing—should refuse to hear it. (ECF No. 5 at 9).

The claims alleged in this adversary proceeding substantially overlap with those brought in the Louisiana Case. Omega's complaint in the Louisiana Case requests a "judgment . . . recognizing the lien and privilege of Omega . . . against the ATP Innovator to secure payments of totaling $1,293,351.34 . . . ."). (ECF No. 5-1 at 5-6). Omega's complaint in this adversary proceeding requests that it "be awarded a judgment . . . recognizing [Omega's] security interest in and to the ATP Innovator, and ordering that the ATP Innovator be seized and sold to satisfy [Omega's] security interest." (ECF No. 1 at 6-7). The inclusion of the additional request that the Innovator be sold does not change the substance of the claim. *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403,

408 n. 6 (5th Cir. 1971)) ("[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized of the issues . . . ."). In any event, Omega has made clear in its response to Infrastructure's motion that it "filed this case for one reason and one reason only. That is, the suit was filed to obtain a judicial determination of Omega's claim and privilege against the Innovator." (ECF No. 10 at 3). This claim is identical to the claim in the Louisiana Case.

The Louisiana Case was filed 15 months before this adversary proceeding, and extensive discovery had taken place. (ECF No. 18-1 at 3). Omega argues that the Louisiana court, through its closure order, has expressed its intent to defer to this Court to make a decision regarding the claims in this adversary proceeding. (ECF No. 10 at 5). However, Omega only brought this adversary proceeding *after* its motion was dismissed and the Louisiana Case was administratively closed. The chronology leaves the Court to conclude that it is the administrative claim in ATP's bankruptcy case on which the Louisiana court is awaiting resolution, not the recognition of lien claim that is the subject of this adversary proceeding.

Of greatest importance is the decision already made by this Court. The United States Bankruptcy Court is a unit of the United States District Court. 28 U.S.C. § 151. Accordingly, decisions by the United States District Court for the Southern District of Texas and decisions by the United States Bankruptcy Court for the Southern District of Texas are decisions of the same Court. The United States District Court for the Southern District of Texas has already deferred under the first-to-file rule to the United States District Court for the Eastern District of Louisiana. (ECF No. 18-1). The Bankruptcy Court (an Article I Court) declines the opportunity to turn Article III of the Constitution on its head by revisiting the decision of its own District Court.

Omega has previously moved to reopen the Louisiana Case to transfer the matter to this Court to be heard in conjunction with this adversary proceeding. (ECF No. 18-1 at 4). The Louisiana court denied the motion and admonished Omega that no additional motions to reopen the case were to be filed prior to the final conclusion of the ATP Bankruptcy case. (*Id.*). The closure order in the Louisiana Case makes it clear that the case will only proceed *after* the administrative claim is resolved in the ATP bankruptcy case. Omega can resolve its administrative claim three ways: (1) waive it, (2) settle it with the chapter 7 trustee, or (3) await final distribution. Any of these would appear to resolve the claim with finality such that the Louisiana Case would be ripe for consideration.

Nevertheless, as already explained by our District Court, there are a variety of reasons this matter should ultimately be resolved by the Louisiana district court, the court in which it was first filed: (1) the Louisiana court is the court most familiar with this case; (2) extensive discovery has already taken place; (3) in denying the motion to transfer, the Louisiana court has demonstrated its intent to resolve the matter; and (4) any ruling by this Court would infringe upon the authority of the Louisiana court. The principles that underpin the first-to file rule are all present in this case. Accordingly, Infrastructure's motion to dismiss is granted.

The other issues present in this case, including Infrastructure's motion to withdraw reference, are moot.

## Conclusion

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **March 15, 2016.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE